**BLUE CROSS OF WESTERN PENNSYLVANIA, Plaintiff,**

v.

**Joseph C. NARDONE, an individual, Defendant.**

**Civ. A. No. 87–1984.**

United States District Court, W.D. Pennsylvania.

Feb. 23, 1988.

John F. Perry, Thomas P. Peterson, Springer Bush & Perry, P.C., Pittsburgh, Pa., for plaintiff.

Peter J. Pietrandrea, Elwood City, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

On September 21, 1987, Blue Cross of Western Pennsylvania (Blue Cross) filed a complaint against Joseph Nardone alleging violations of the Racketeer Influenced and Corruption Act, 18 U.S.C. § 1961 et seq. (RICO). Nardone has filed a Motion to Dismiss, which is presently pending before this court.

### 1. *Facts*

For purposes of ruling on this Motion to Dismiss, we will accept Blue Cross's factual allegations. Blue Cross alleges that Nardone is licensed as a pharmacist in Pennsylvania. He operates Nardone's Pharmacy (Pharmacy), which engages in interstate commerce.

In 1969, Blue Cross and Nardone entered into a contract under which the Pharmacy agreed to provide Blue Cross subscribers with prescription drugs and Blue Cross agreed to pay the Pharmacy. The parties performed the contract satisfactorily until July 1, 1983, at which time Nardone began submitting false and fraudulent claims to Blue Cross. These claims were for prescriptions that either were not filled or were not prescribed. Nardone used the U.S. Mails to carry out his scheme. He kept some of the proceeds himself, and used the balance to operate the Pharmacy. Nardone continued submitting false claims until August 30, 1984, when Blue Cross discovered the fraud.

### 2. *Legal Analysis*

Blue Cross has asserted claims under 18 U.S.C. § 1964 for injuries resulting from Nardone's violations of 18 U.S.C. §§ 1962(a), (b), and (c), which read as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity, ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

Nardone has arranged his arguments in favor of his Motion to Dismiss into eight issues, and we will address each of his issues in turn.

### A. Injury Causation under § 1962(a)

■ Nardone's first argument is that Blue Cross has failed to allege the proper injury as required by 18 U.S.C. § 1964(c), which states in part that, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor...." Nardone asserts that Blue Cross was injured by the submission of false claims, not by the investment of the proceeds in the Pharmacy. Blue Cross contends that it was injured by the investment because the funds that Nardone invested in the Pharmacy toward its continued operation allowed Nardone to perpetuate the fraud.

The case law defining the nature of the injury one must sustain to invoke § 1964(c) is ambiguous. Two recent district courts cases in Pennsylvania addressed this issue. In *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107 (E.D.Pa.1986), the defendant was a brokerage firm that allegedly made some improper securities transactions, then invested the proceeds. Although the court did not recite the facts in great detail, it seems that the defendants invested the proceeds of their scheme in stock of other companies, not their own firm. The court dismissed the § 1962(a) claim because it found no causal relationship between the investment of funds and any injury to the plaintiffs.

In *Roche v. E.F. Hutton & Co., Inc.*, 658 F.Supp. 315 (M.D.Pa.1986), the individuals worked at E.F. Hutton and used income from their racketeering activities to operate E.F. Hutton. The court held that the plaintiffs had sufficiently averred an injury caused by a violation of § 1962(a). The court distinguished *Gilbert* based on the presence or lack of causality; the court seemed to hold that investment of the proceeds in an unrelated business does not injure the plaintiff, and that investment in a business connected with the racketeering activity does injure the plaintiff.

Unfortunately, neither *Gilbert* nor *E.F. Hutton* recite the facts in sufficient detail to establish clear guidelines for evaluating an injury for purposes of § 1962(a). After reviewing numerous cases from various districts and circuits, we conclude that the proper distinction to draw in determining the causal relationship between the investment of proceeds and the injury to the plaintiff is whether the plaintiff was injured by the operation of the company in which the defendant invested the proceeds.

A comparison of two cases illustrates the distinction. In *Waldschmidt v. Crosa*, CCH RICO Business Disputes Guide p. 6215 (11th Cir.1986), the defendant fraudulently operated a laundromat and invested the proceeds from his fraud in his insurance business. The court dismissed the § 1962(a) claim because the plaintiff was

injured by the laundromat fraud, not the investment in the insurance business. In *Roche v. E.F. Hutton & Co., Inc.,* 658 F.Supp. 315 (M.D.Pa.1986), the defendant was both conducting his racketeering activity through E.F. Hutton and reinvesting the proceeds in E.F. Hutton. The court held that the investment did cause an injury because money that enabled the business to continue operating also enabled the defendant to perpetuate the fraud. *See, also, Schreiber Distributing Co. v. Serv– Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986).

■ When we apply this analysis to the instant facts, we conclude that Blue Cross has sufficiently alleged injury under § 1962(a). Blue Cross claims that Nardone invested the proceeds in the Pharmacy and used the Pharmacy to conduct his racketeering activities. We find that Congress intended §§ 1962(a) and 1964(c) to redress this type of injury.

B. "Use or invest" under § 1962(a)

■ Nardone also argues that Blue Cross's § 1962(a) claim should be dismissed because he did not acquire or establish the Pharmacy with proceeds from racketeering activity. Nardone notes that the Pharmacy was in existence and solely owned by Nardone in 1969 and the alleged fraud did not commence until fourteen years later.

Nardone's argument, however, ignores certain language in § 1962(a); the statute prohibits the use or investment of the income "in the acquisition of any interest in, or the establishment *or operation* of, any enterprise...." (emphasis added). Blue Cross has alleged that Nardone used the funds in the operation of the Pharmacy.

The Western District of Michigan considered the same issue in *Omega Construction Co., Inc. v. Altman,* 667 F.Supp. 453 (W.D.Mich.1987). In *Altman,* the plaintiff sued an individual, a corporation owned solely by the individual, and four limited partnerships. The court denied the motion to dismiss the § 1962(a) count against the individual and the corporation because the "plaintiff has alleged that these defendants ... used money derived from a pattern of racketeering activity to ... operate certain enterprises, i.e. [the corporation and the limited partnerships], in a manner that caused it to suffer injury." *Id.* at 465. In other words, the use of proceeds to operate a business violates § 1962(a).

Blue Cross alleged that Nardone used the proceeds from his racketeering activity to operate the Pharmacy and that Blue Cross was injured by the operation of the Pharmacy. Thus, we find that Blue Cross's Complaint states a claim under § 1962(a).

C. Cause of Action under § 1962(b)

■ Nardone offers essentially the same arguments under § 1962(b) that he made under § 1962(a). He contends that Blue Cross failed to assert the proper injury and that Blue Cross did not sufficiently allege that he acquired or maintained an interest in the Pharmacy.

With respect to Nardone's argument that Blue Cross did not assert an appropriate injury, we find that the same analysis applies to both § 1962(a) and § 1962(b). The case that Nardone cites, *Rich Maid Kitchens v. Pa. Lumbermans Mut. Ins. Co.,* 641 F.Supp. 297 (E.D.Pa.1986), applies a single analysis to both §§ 1962(a) and (b) (in fact, the court did not even consider the sections individually). The court dismissed the claims under both §§ 1962(a) and (b) because the plaintiff did not allege any injury from the use or investment of the money or from the acquisition of an interest. Thus, for the same reasons that we found Blue Cross's allegations of injury sufficient under § 1962(a), we also find their allegations sufficient under § 1962(b).

With respect to Nardone's assertion that Blue Cross did not allege that Nardone acquired or maintained an interest in the Pharmacy, we disagree. Under notice pleading in the Federal courts, the standards for pleadings are very liberal. *See, e.g., Omega Construction Co., Inc. v. Altman,* 667 F.Supp. 453, 465 (W.D.Mich. 1987). Blue Cross has alleged that Nardone used the income from his racketeering activity to operate the Pharmacy. We find

that such use of proceeds can constitute maintaining one's interest in an enterprise. Therefore, we will deny Nardone's motion to dismiss Blue Cross's claims under § 1962(b).

### D. Separate Entities Under § 1962(c)

■ Blue Cross, Nardone, and numerous federal judges all agree that § 1962(c) requires an enterprise that is a distinct entity from the person charged with the violation. *See, e.g., B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984); *Wright v. Everett Cash Mut. Ins. Co.,* 637 F.Supp. 155 (W.D.Pa.1986).

Nardone asserts that he and the Pharmacy are not two separate entities. Because he is the sole owner of the Pharmacy, Nardone argues, the two entities merge for purposes of the RICO statute. Nardone cites two cases in support of his merger argument. In *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984), the plaintiff sued only a corporation. The Third Circuit court held that a corporation could not be both the defendant and the enterprise under § 1962(c). The court dismissed the § 1962(c) count for lack of a separate entity, but did not discuss the merger doctrine. In *Wright v. Everett Cash Mut. Ins. Co.,* 637 F.Supp. 155 (W.D. Pa.1986), the defendant argued that the court should consider an insurance agent and an insurer as one entity. The court refused. Thus, the authority Nardone cites does not support Nardone's assertion of the merger doctrine.

Blue Cross cites *McCullough v. Suter,* 757 F.2d 142 (7th Cir.1985), in opposition to Nardone's contentions. In *McCullough,* the plaintiff sued the defendant under § 1962(c) naming the defendant's sole proprietorship as the enterprise. The court held that an individual and his sole proprietorship are separate entities unless the proprietorship is "strictly a one-man show" and has no employees other that the owner. *Id.* at 144.

If Nardone was, in fact, the sole employee of the Pharmacy during the time period at issue, then Blue Cross may not have a claim under § 1962(c). For purposes of this Motion to Dismiss, however, we must accept Blue Cross's factual assertion that the Pharmacy and Nardone are separate entities. Therefore, we find that Blue Cross's allegations of a separate enterprise are sufficient.

### E. Pattern of Racketeering Under RICO

■ Nardone asks this court to dismiss all the RICO counts, averring that Blue Cross's allegations constitute a single scheme or artifice, not a pattern of racketeering. Nardone argues that RICO requires multiple schemes or episodes, citing several district court cases from Pennsylvania. *See, e.g., Wright v. Everett Cash Mutual Insurance Company,* 637 F.Supp. 155 (W.D.Pa.1986); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa. 1981).

The Third Circuit recently issued an opinion that resolves many of the ambiguities surrounding the pattern requirement. In *Barticheck v. Fidelity Union Bank/First Nat. State,* 832 F.2d 36 (3d Cir.1987), individuals and a bank fraudulently induced the plaintiffs to invest funds in an oil and gas drilling partnership.

The circuit court concluded, and in fact the plaintiffs conceded, that all the fraudulent misrepresentations were part of a single scheme. The court noted that several individuals and a bank carried out the scheme, and that the scheme involved the repetition of similar misrepresentations to more than twenty investors. From these two circumstances, the court concluded that the conduct constituted a pattern: "to refer to such conduct as a 'pattern' of fraudulent activity certainly comports with the ordinary understanding of the term, and we believe that this conduct properly falls within the reach of the RICO statute." *Id.* at 39.

The instant facts are somewhat less compelling that the facts in *Barticheck;* a single individual defrauded a single corporation. Nonetheless, we find that repeated submissions of false claims over a thirteen month period form a pattern as defined by the Third Circuit.

F. Open-ended Requirement Under RICO

 Some courts have imposed an additional requirement that the pattern of activity be open-ended or ongoing. Nardone again cites some district court cases in Pennsylvania to support this proposition. However, the Third Circuit rejected the open-ended requirement in *Barticheck v. Fidelity Union Bank/First Nat. State*, 832 F.2d 36 (3d Cir.1987). The court stated that, "we also reject the view that racketeering acts committed pursuant to a single scheme can constitute a RICO pattern only if the scheme is ongoing or open-ended. This requirement is ostensibly derived from the statement in RICO's legislative history ... that a pattern must display "continuity".... At the very least, such a requirement would produce anomalous results." *Id.* at 39.

Applying the *Barticheck* reasoning to the instant facts, we find that an open-ended requirement would produce the anomalous results forecast by the circuit court. Nardone allegedly stopped his fraud only when Blue Cross uncovered his misrepresentations. In effect, Nardone asks us to shelter him from the provisions of the RICO statute because he got caught. We decline to do so.

G. Pendant Jurisdiction

Finally, Nardone asks us to dismiss the state claims because Blue Cross failed to state a federal claim. Because we have concluded that Blue Cross did state a claim under the RICO statute, we also find that this court has pendant jurisdiction over Blue Cross's state claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. *Conclusion*

After examining the standards of the RICO statute and the instant facts, we conclude that Blue Cross has stated valid claims. Blue Cross has alleged that Nardone's use of funds to operate the Pharmacy injured them, that Nardone and the Pharmacy are separate entities, and that Nardone conducted a pattern of racketeering activity. We will, therefore, deny Nar-

done's motion to dismiss the RICO counts and the related state claims.