**Barry F. PENN, individually and on behalf of all others similarly situated**

**v.**

**ALAMO RENT–A–CAR, INC.**

**Shari B. DEGHI, individually and on behalf of all others similarly situated**

**v.**

**ALAMO RENT–A–CAR, INC.**

**Beth ERVAIS, individually and on behalf of all others similarly situated**

**v.**

**ALAMO RENT–A–CAR, INC.**

**Master File No. 89–0121.**
**Civ. A. Nos. 89–0195, 89–1738.**

United States District Court,
E.D. Pennsylvania.

Sept. 25, 1989.

On Motion For Reconsideration
Nov. 17, 1989.

Arnold Levin, Levin, Fishbein, Sedran & Berman and Harold Berger and Warren D. Mulloy, Berger & Montague, Philadelphia, Pa., for plaintiff, Beth Ervais.

Dianne M. Nast, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for plaintiff, Barry F. Penn.

Richard D. Greenfield and C. Oliver Burt, III, Greenfield & Chimicles, Haverford, Pa., for plaintiff, Shari B. Deghi.

Schulte Roth & Zabel by John S. Martin, Jr., New York City and Baskin Flaherty Elliott & Mannino, P.C. by Louis B. Kupperman and Kevin J. Kehner, Philadelphia, Pa., for defendant, Alamo Rent-A-Car, Inc.

## BENCH MEMORANDUM [*]

LOUIS H. POLLAK, District Judge.

What is before us is a motion to dismiss the complaint in this matter. The complaint was filed in January. A motion to dismiss for failure to state a claim was filed in late April, concurrent with the filing of an answer. As noted, I conclude that the motion to dismiss is to be deemed timely and I will therefore address it.

The complaint in this action is one which is brought on behalf of three plaintiffs who present themselves as members of a class. A motion for class certification has been filed and is pending. The plaintiffs are persons who allege that they have rented cars from the defendant, Alamo Rent-A-Car ("Alamo"), which is alleged to be one of the largest automobile rental agencies in the United States. It is incorporated in Florida, has its principal place of business there, and does business in a great many states, including Pennsylvania.

It is alleged in the complaint that beginning on or about January 1, 1985, and continuing up until the date of the filing of the complaint, which, as I stated, was in early January of this year, the defendant has engaged in certain fraudulent practices in the operation of its automobile rental business.

The substance of the alleged fraud can, I think, be fairly simply described. The claim is that Alamo pursued the practice of advising potential customers who called in by telephone that the rental terms with respect to a particular automobile added up to a particular amount, only to have the customer, having made a telephone reservation on the basis of that representation, discover on arriving at the Alamo rental agency, which typically is adjacent to but not on the premises of the airport, that the rental costs are in fact in excess of those which have been represented to the customer over the telephone.

[*] This opinion has been edited slightly to improve intelligibility.

It is alleged most particularly that the customer would learn only when he or she got to the counter that there was an airport surcharge which Alamo was passing on to the customer; that there would be a charge for fuel up to half a tank, even if the automobile were returned full of gasoline; and that the customer would also be advised at the airport, but not prior to arriving at the airport, of an obligatory charge for insurance, which would add to the expense, notwithstanding that in some instances the representations with respect to the insurance charges were themselves misrepresentations.

The complaint commences with three counts which are counts asserted under RICO, that is to say they are federal claims, followed by four counts which are common law or state statutory claims. The four state law claims are pendent to the three federal claims.

The question raised by the motion to dismiss for failure to state a claim is whether the three federal causes of action are viable or whether any of the three is viable. If any of the three is viable, it is common ground, as a matter of subject matter jurisdiction, that the four state law claims can be heard in connection with the federal cause (or causes) of action. The problems explored on argument today, and to which I will confine myself, relate to the sufficiency of the asserted federal causes of action.

In defining the RICO claims, the complaint asserts that the fraudulent representations or failures of disclosure which commonly were made by telephone to would-be customers, including the named plaintiffs, constituted acts of wire fraud within the meaning of the relevant federal criminal statute; it is further alleged that various mailings, the contents of which are not specified in the complaint, all auxiliary to the pattern of fraud alleged, constituted mail fraud within the companion federal criminal statute. This fraudulent conduct is alleged to be, for RICO purposes, the relevant pattern of racketeering activity.

The three RICO counts allege respectively civil causes of action arising under 18 U.S.C. § 1962(a); 18 U.S.C. § 1962(b); and 18 U.S.C. § 1962(d). As the placement of that list of prohibited activities in Title 18 suggests, these subsections of section 1962 are federal crimes. But, as section 1964 makes plain, violations of the respective subsections of 1962 are grounds for a civil action under 1964(c) to be brought by "[a]ny person injured in his business or property by reason of a violation of section 1962" in a civil suit in which the victorious plaintiff may recover threefold the damages suffered.

### COUNT ONE—§ 1962(a)

■ Count One makes a claim under section 1962(a). The pertinent language of 1962(a) is:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

*Id.* The claim is that Alamo has derived income from the described pattern of racketeering activity and Alamo has, as stated in paragraph 15 of the complaint, "used and invested [that income] in the operation of the aforesaid enterprises, in violation of 18 U.S.C. § 1962(a)." Now, though paragraph 15 uses the word "enterprises" in the plural, it appears that the enterprises aforesaid actually constitute the single entity Alamo, the defendant itself, since we are advised in Paragraph 11 that with respect to plaintiffs' claims under 18 U.S.C. § 1962(a) only, defendant Alamo constitutes an "enterprise."

The central thrust of the motion to dismiss for failure to state a claim with respect to Count One is that Count One as formulated does not allege in any factual sense injury "by reason of a violation of

section 1962," within the meaning of section 1964(c).

The position taken, however, by the defendant is that the loss which arises from the pattern of racketeering activity, in this instance mail or wire fraud, is not the loss which can trigger civil liability under section 1964(c). What section 1962(a) makes unlawful, so it is contended, is not the predicate activity, the pattern of racketeering activity, but the "investment" or "use" of the proceeds in the acquisition of an interest in an enterprise or in its establishment or operation. Further, the argument runs, the injury of which the plaintiff has complained must flow from that investment or use—to use the two statutory words—in the enterprise of the unlawfully-derived income. That the defendant is right in its statutory analysis is clear from the decision of the Court of Appeals for this circuit in *Rose v. Bartle*, 871 F.2d 331 (3d Cir.1989), a decision announced on March 20, 1989, somewhat over two months after the filing of the complaint in this case. The appellate opinion sustained the position to that effect taken by my colleague Judge Giles in the district court, *Rose v. Bartle*, 692 F.Supp. 521 (E.D.Pa. 1988), in an opinion announced in July of 1988.

Judge Giles and the Court of Appeals relied on the decision of Chief Judge Fullam in *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107 (E.D.Pa.1986), among other cases.

What Judge Giles said, after having noted that § 1962(a) requires a showing of (1) receipt of money from a pattern of racketeering, (2) investment of the money in an enterprise, and (3) that the enterprise was engaged in commerce, was that "[i]n addition, plaintiff must show that he was injured by defendants' investment of money into the enterprise and not simply by the pattern of racketeering activity." *Rose v. Bartle*, 692 F.Supp. at 533.

As counsel for the plaintiffs and the defendant recognize, this position was sustained by the opinion written by Judge Greenberg for the Third Circuit in March. Judge Greenberg, after noting that there was authority on both sides of the issue,

stated: "the majority of courts that have addressed the issue have come to the same conclusion as the district court." After citing further cases, he said: "requiring the allegation of income use or investment injury 'is consistent with both the literal language and the fair import of the language [of section 1962(a) ].' " 871 F.2d at 357–58, *quoting P.M.F. Services, Inc. v. Grady*, 681 F.Supp. 549, 555–56 (N.D.Ill. 1988).

The plaintiff contends that Count One is proper both as a matter of pleading and as a matter of theory. Plaintiff notes that paragraph 16 precisely alleges that plaintiff and each member of the class has been injured in their business and property by reason of defendant's violation of 18 U.S.C. § 1962(a); and in brief and in argument plaintiffs contend that it is not the dollar loss generated by the mail or wire fraud which is the besetting injury that brings civil liability into play, but it is the investment by Alamo of its illegal gains back into Alamo as the enterprise that triggers injury. The theory here is that, by putting ill-gotten gains back into the enterprise, Alamo strengthens and perpetuates the fraudulent scheme and facilitates its reoccurrence.

The plaintiff here puts heavy reliance on a decision of February of 1988 by Judge Mencer in the Western District of Pennsylvania, *Blue Cross of Western Pennsylvania v. Nardone*, 680 F.Supp. 195 (W.D.Pa. 1988). There, Judge Mencer did conclude that Blue Cross stated a valid 1962(a) claim against Nardone in alleging a pattern of fraudulent submission of false prescriptions through the mechanism of Mr. Nardone's pharmacy, the pharmacy being the enterprise back into which Mr. Nardone was alleged to have poured at least some part of the proceeds of his scheme. Judge Mencer concluded, in reliance on a Middle District case, *Roche v. E.F. Hutton & Co., Inc.*, 658 F.Supp. 315 (M.D.Pa.1986), that it was a scenario in which, as in *Hutton*, "[t]he court held that the investment did cause an injury because money that enabled the business to continue operating also enabled the defendant to perpetrate

the fraud." *Blue Cross,* 680 F.Supp. at 198.

That perception of the scenario is, in plaintiffs' view, particularly relevant here because this is at least contemplated as being a class action, and so, in plaintiffs' view, each enhancement of Alamo by reinvestment of the proceeds of one fraud strengthens Alamo in perpetrating the next fraud on the same or another class member.

The theory of *Blue Cross* apparently is that "the proper distinction to draw in determining the causal relationship between the investment of proceeds and the injury to plaintiff is whether the plaintiff was injured by the operation of the company in which the defendant invested the proceeds." *Blue Cross,* 680 F.Supp. at 197.

In drawing that distinction, the *Blue Cross* court distinguished Judge Fullam's decision in *Gilbert v. Prudential Bache* as one in which, so Judge Mencer concluded, "the defendants invested the proceeds of their scheme in stock of other companies, not their own firm." *Blue Cross,* 680 F.Supp. at 197.

My reading of *Gilbert* does not confirm—though it does not preclude—that scenario. Suffice it to say that I find nothing in Judge Fullam's opinion which rests on such a distinction.[1]

In any event, I conclude that *Blue Cross*—which antedates chronologically not only the Court of Appeals' opinion in *Rose v. Bartle* but Judge Giles' decision in the district court—is simply out of line with, and purports to elaborate a ramification of distinction that is not borne out by, the authoritative determination by the Court of Appeals in *Rose v. Bartle.*

In this connection, I would refer to Judge Ludwig's discussion of the cases, including

*Blue Cross,* in his quite recent opinion in *Blue Line Coal Company v. Equibank,* No. 87–6150, 1989 WL 63203 (June 9, 1989, 1989 U.S. Dist. LEXIS 6558, 4–5).

Accordingly, notwithstanding that paragraph 16 makes the conclusory recital that plaintiff and each member of the class has been injured in their business and property by defendant's violation of 18 U.S.C. § 1962(a), I am not satisfied that the complaint in Count One spells out any injury to any of the named plaintiffs or other putative class members, apart from the particular injury that flowed from the predicate acts of the pattern of racketeering injury.[2] Since I find in this complaint no sufficient allegation of injury, I conclude that Count One cannot stand.

### Count Two—1962(c)

■ Count Two is based on section 1962(c) which states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

*Id.* The framework of the claim under section 1962(c) differs from that under 1962(a), not only in its statutory elements, but in, with respect to this complaint, the identification of the roles played by particular actors. In 1962(c), it is not alleged that Alamo is the enterprise, nor could such an allegation stand under 1962(c). The law is clear, certainly in this circuit, that there cannot be an identity of a person and enterprise under 1962(c).

The theory of the 1962(c) claim in this complaint is that, as explained in paragraphs 18, 19, and 20 of the complaint, the

---

**1.** I make this point because *Rose v. Bartle,* both at the district court and at the court of appeals, rests in substantial measure on *Gilbert.*

**2.** In reaching this conclusion, I reject the argument that Count One can be sustained, if not for an individual plaintiff, for a class of plaintiffs, with each fraud in principle after the primal evil, the first fraud, being facilitated by the income generated by the first and subsequent frauds.

The characterization of a case as a "class action" cannot in my judgment alter the requirement that each member of the class allege, and individually, each named class member, speaking for himself or herself, as well as putatively for other class members, must allege, personal to that plaintiff, there was a complete cognizable statutory wrong.

fraudulent activities attributed to Alamo—that is to say, the pattern of racketeering activity—are facilitated by the credit mechanisms utilized by the plaintiffs and the defendant.

Paragraph 18 refers to the utilization by plaintiff and other class members of "credit facilities such as, American Express, VISA and Mastercard, maintained by a variety of banks and other financial institutions in connection with their rental of motor vehicles from defendant." Further, we learn from paragraph 19 that "defendant tendered invoices or other demands for payment to plaintiff and other members of the class. These demands for payment were tendered either individually, or, in those instances where the rental was made by credit card, were incorporated as part of the bill sent by the bank or other financial institution operating the credit card facility." In paragraph 20, it is alleged that all of the various financial institutions referred to in paragraphs 18 and 19 were "enterprises" for purposes of the 1962(c) count.

On argument today plaintiff has narrowed its position. Plaintiff no longer contends that the banks on which class members would draw checks in payment for their automobile rentals were enterprises. The claim as I now understand it is simply that it is sufficient that the credit instrumentalities utilized by the defendant in collecting its rental fees were enterprises for 1962(c) purposes. This would include American Express, Mastercard, VISA and other credit networks which are established by the banking community, and it would also include the banks utilized by Alamo itself as the conduits for processing such invoices as would be generated in the processing of the rental agreements which were themselves the product of the alleged pattern of racketeering activity.

As I understand it, in narrowing the definition of "enterprises" for purposes of Count Two, plaintiffs have not disavowed the contention that these other financial institutions might be characterized as "enterprises," but plaintiffs do recognize that they lie in an outer circle rather than an inner circle of concentric circles of entities that have some bearing on the extension of credit and the consummation of the credit transactions generated by the fraud.

Both parties have regarded as authoritative, with respect to 1962(c), the language of the Third Circuit in *United States v. Provenzano*, 688 F.2d 194 (3d Cir.1982), a criminal prosecution under 1962(c). The Third Circuit there quoted and expressed its approval of language used by the Second Circuit in *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980). The language of the Third Circuit in *Provenzano* runs as follows:

> The Court of Appeals for the Second Circuit held that one conducts the activities of an enterprise through a pattern of racketeering when: "(1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise; or (2) the predicate offenses are related to the activities of that enterprise."

688 F.2d at 200. Having quoted the Second Circuit in those terms, the Third Circuit went on to say "[i]t is only when the predicate acts are unrelated to the enterprise or the actor's association with it that the nexus element is missing, and consequently there is no RICO violation."

Though both sides recognize the authoritativeness of the quotation from *Scotto*, plaintiff puts particular reliance on the immediately subsequent sentence of the Third Circuit, which I have just quoted. Defendant, for its part, notes the discussion on the same page of a Fourth Circuit opinion [3] of which the Third Circuit approved. Referring to the Fourth Circuit case, the Third Circuit stated: "[t]he panel later modified its original opinion, however, finding instead that the proper question should have been whether the affairs of the enterprise 'were *conducted* through the pattern of racketeering activity, not whether they

---

**3.** *United States v. Webster*, 639 F.2d 174 (4th Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

were benefited or advanced or whether profit to the [enterprise] resulted.'" *Provenzano*, 688 F.2d at 200.

The question arising under Count Two of the present complaint is whether, taking the more restricted concept of "enterprise" which plaintiff now relies on as distinct from the more elastic concept embraced by the language of Count Two as written, it can be said that Alamo has, within the meaning of 1962(c), put itself in the position that the statute defines, namely, "it shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The plaintiffs do not, as I understand it, contend that Alamo is, in any sense understood by the statute, employed by American Express, Mastercard or VISA, or by any of Alamo's own banks. The statutory claim rather is that Alamo is associated with the enterprises and has participated directly or indirectly in the conduct of such enterprises' affairs through a pattern of racketeering activity.

The question, to put it in *Provenzano* terms, is whether it can fairly be said that "the predicate offenses are related to the activities of that enterprise," that being the *Scotto* language, or whether, in Judge Weis' further language, this be a case in which "the predicate acts are unrelated to the enterprise or the actor's association with it."

The relationship here in a certain sense seems plausible. That is to say, there is the chronological relationship: the allegation is that subsequent to the commission of the alleged fraud—the creation of the rental relationship by deceptive practices which understate the amount of the ultimate rent—the plaintiffs became indebted to Alamo, and the banking system, involving both plaintiffs' credit cards and defendant's banks, is utilized to secure a payment to Alamo for the indebtedness.

Now, can that be characterized as "relationship" in the sense contemplated by the statute? The "relationship" in the sense contemplated by the statute is "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

What I find unpersuasive is the contention that the affairs of American Express or a similar instrumentality are conducted "through a pattern of racketeering activity."

What I find is a chronological sequence, but not a situation in which the affairs of American Express or one of Alamo's banks were themselves participated in or conducted by Alamo through Alamo's chronologically antecedent and completed fraud.

The distinction is, for me, illustrated by a case which seems to me cognate with, albeit not congruent to, the one we have here—I have in mind the Third Circuit's discussion in *Averbach v. Rival Manufacturing Co.*, 809 F.2d 1016 (3d Cir.1987) of the 1962(c) claim in that case. *Averbach* is, of course, a case that follows after the Court of Appeals' decision in *Provenzano*. In *Averbach*, Chief Judge Gibbons said:

"In Count I, Averbach alleges that by serving through the mails its false answers to interrogatories, Rival Manufacturing Company engaged in a pattern of racketeering activity, thereby corrupting an enterprise, United States District Court for the Eastern District of Pennsylvania. The theory of the complaint is that the District Court is an enterprise and that Rival Manufacturing Company, by serving the false answers to interrogatories, participated in the conduct of that enterprise's affairs, all within the meaning of 18 U.S.C. § 1962(c) (1982). We agree that a court may be an enterprise under the meaning of RICO. In those cases in which courts have been recognized as RICO enterprises, however, the participants engaged in patterns of activities designed to corrupt the operation of the court's own processes. Whereas litigants before courts call on the courts to exercise the judicial process, they do not participate in it in the sense intended by Congress in 18 U.S.C. § 1962(c) (1982). Such litigants do not

share with the court's personnel a common purpose with respect to the activity complained of."

*Id.* at 1018, citations omitted.[4]

Now, I recognize that the United States District Court for the Eastern District of Pennsylvania is an enterprise which is not on all fours with American Express. But, in terms of statutory definition, it is hard to see why the characterization employed by the Third Circuit in *Averbach* does not have application here. Indeed, I think it would be fair to say that in *Averbach*, the alleged utilization by the defendant of the enterprise in the carrying out of its racketeering activity—namely, utilizing the court system as the conduit for its false answers to interrogatories—was rather closer to the mark than the conduct or participation alleged in the present complaint.

My view that the 1962(c) claim made in Count Two of the instant complaint does not fit the statutory scheme is strengthened by the fact that ambiguity in defining RICO liability is simply not tolerable.[5] So, I conclude that Count Two fails.

### COUNT THREE—1962(d)

Count Three, as noted, is a claim under section 1962(d). That is to say, a claim of RICO conspiracy. Count Three is, in its entirety, as follows:

23. The averments of paragraphs 1 through 22, inclusive, are incorporated by reference as if fully set forth herein.
24. Defendant has conspired with other persons presently known and unknown to plaintiff to violate the provisions of 18 U.S.C. §§ 1962(a) and (c) and has undertaken the acts alleged herein to effect these violations, in violation of 18 U.S.C. § 1962(d).

On argument today, there was discussion whether there might be situations in which there could be a cognizable civil RICO conspiracy where there was no cognizable substantive claim arising under 1962(a), (b), or

(c). There is case language to suggest that there could not be. However, the fertile brain of plaintiffs' counsel suggested at least one scenario that may indeed embody a cognizable conspiracy claim separate from cognizable substantive claims.

But, the scenario proposed, one in which a conspiracy got so far as to result in racketeering activity but not to the completion of a substantive offense as defined under (a), (b), or (c), is not to be found in Count Three as described. Count Three as described quite clearly depends on Count One or Count Two or both. Indeed, there is no independent claim in paragraphs 23 or 24 of injury arising from the alleged conspiracy between defendant and "other persons presently known and unknown to plaintiff."

So, I conclude that, with the failure of Counts One and Two, Count Three fails as well.

### COUNTS FOUR—SEVEN

■ With the failure of these three asserted federal claims, this court is, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), without jurisdiction to entertain the state law claims. There are circumstances, of course, in which a case has gone far enough beyond the pleading stage so that the departure of the federal claims would leave it quite uneconomical to not proceed with the state claims, and where the federal court is therefore authorized to go forward with the pendent claims, but this is not such an instance.

The 12(b) motion has successfully challenged the federal claims, and, with their demise, the pendent claims fall away as well. So, I will enter an order which—for the reasons stated at perhaps too great length from the bench this afternoon—grants defendant Alamo's motion to dis-

---

4. The determination of Chief Judge Gibbons in that respect is cognate with the decision of Judge Knapp in the Southern District in *Park South Associates v. Fischbein*, 626 F.Supp. 1108, 1112 (S.D.N.Y.1986), an earlier decision.

5. In our present context we are concerned with civil liability, but 1962(c) is also a criminal

statute, and to conclude that Alamo's relationship to the financial institutions utilized by it in collecting these rental fees was itself criminal participation in or conduct of an enterprise through a pattern of racketeering would, in my judgment raise very serious Fifth Amendment problems of "vagueness" in the criminal orbit.

miss for failure to state cognizable causes of action. I thank you all for your attentiveness, at least for the appearance of attentiveness, and, more than that, I thank you for the instruction that counsel on both sides have afforded me, both in their valuable written submissions and in the extremely interesting oral argument today.

On Motion For Reconsideration

I

In moving for reconsideration of the Order of dismissal of September 25, 1989, plaintiffs contend that this court's bench opinion of September 25, which was the predicate for the September 25 order, is inconsistent with the Court of Appeals' opinion in *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162 (3d Cir.1989).

I had not read *Shearin* on September 25, the day the motion to dismiss was argued and decided. Nor, as the motion for reconsideration recites, had counsel for plaintiffs. Very likely counsel for defendant had also not caught up with *Shearin,* which had been decided only five days earlier.

Having now read *Shearin,* I do not think that opinion mandates reconsideration of the September 25 order:

1. *18 U.S.C. § 1962(a)*

With respect to Count One, alleging, pursuant to 18 U.S.C. § 1964(c), a claim arising "by reason of a violation of" 18 U.S.C. § 1962(a), plaintiffs in their supporting memorandum contend that:

... under *Shearin,* plaintiffs have adequately averred a violation of § 1962(a), even though, as in *Shearin,* the proceeds of the racketeering activity were reinvested in the same enterprise or entity. The only reason the Third Circuit affirmed dismissal of a claim by Ms Shearin under subsection (a) is that the complaint established that the damages she sought were not the result of the investment of such moneys in the enterprise. The Third Circuit observed that "the securities and wire fraud through which the three companies ostensibly conducted their illicit enterprise" did not cause the plaintiff to lose her job, the source of the

alleged injury to her. Slip Op., p. 12 [1168]. By contrast, here plaintiffs clearly averred that their injury flowed directly from the continued operation of Alamo, particularly through its wire and mail fraud activities.

Plaintiffs' Memorandum, p. 3. It appears that plaintiffs read the phrase quoted from page 1168 of the *Shearin* opinion ("the securities and wire fraud through which the three companies ostensibly conducted their illicit enterprise") as a portion of the Court of Appeals' § 1962(a) analysis. This I take to be a misreading. The quoted phrase is part of a paragraph which addresses, in turn, claims under § 1962(a) and § 1962(c) (and, then, in passing, § 1962(b)). The pertinent sentences are as follows:

(1) The Section 1961(a) [sic] and (c) violations:

Applying the *Sedima* standard for civil RICO standing, we conclude, as did the district court, that Shearin had failed to plead injury resulting from defendants' violations of sections 1962(a) or (c). Shearin contends that Hutton caused her injury first in hiring her away from her previous job in Washington, D.C., and then in firing her from Hutton Trust when she refused to play the good soldier. Neither job loss can fairly be said to have resulted from violations of any of RICO's first three subsections or from the predicate acts necessary to establish these. The investment of unlawfully collected fees did not cause Shearin to lose her jobs. Nor did the securities and wire fraud through which the three companies ostensibly conducted their illicit enterprise. Nor, had it been properly pleaded, did the acquisition of the enterprise through the securities fraud scheme, 18 U.S.C. § 1962(b), cause Shearin's hiring or firing.

Pp. 1167–1168; footnote omitted. As I read the foregoing, the Court of Appeals (1) explained the insufficiency of the § 1962(a) claim in the sentence which recites "The investment of unlawfully collected fees did not cause Shearin to lose her job;" and then (2) explained the insufficiency of the § 1962(c) claim in the next following sentence, "Nor did the securities and wire

fraud through which the three companies ostensibly conducted their illicit enterprise [cause Shearin's hiring or firing]."

For the reasons explained from the bench on September 25, I concluded that the complaint does not allege injury to plaintiffs "by reason of" (§ 1964(c)) defendant's investing (in itself, as the "enterprise") the proceeds of the alleged pattern of racketeering activity. That conclusion is consistent with the *Shearin* § 1962(a) analysis. *See also, Rose v. Bartle,* 871 F.2d 331, 357 (3d Cir.1989).[1]

### 2. *18 U.S.C. § 1962(c)*

Starting from *Shearin*'s reminder that the Court of Appeals judges complaints by a "lenient standard," plaintiffs reargue their contention that Count Two adequately alleges that, during the relevant time period, defendant, as a "person associated with any enterprise"—namely, banks in which defendant had accounts, and credit facilities such as American Express—"participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." § 1962(c). I have no quarrel with the "lenient standard." But I remain unpersuaded that Count Two, which advances the theory that the deposit of charge slips and checks constitutes participation in the conduct of the affairs of a bank or credit facility, meets even that standard. *See, Averbach v. Rival Manufacturing Company,* 809 F.2d 1016 (3d Cir.1987). By failing adequately to allege an enterprise, plaintiffs' complaint fails to allege a viable § 1962(c) claim.

### 3. *18 U.S.C. § 1962(d)*

At the argument on September 25 there was some discussion of whether there could be a viable civil claim predicated on a § 1962(d) conspiracy in the absence of a viable substantive companion claim. In the bench opinion I noted that defense counsel had suggested a conceptual scenario—a conspiracy to violate § 1962(a) or (b) or (c) that manifests itself in an injurious pattern of racketeering activity but that does not accomplish its aim of violating one of the substantive sub-sections of § 1962—which appeared to satisfy the letter of the statute. I concluded, however, that the § 1962(d) claim embodied in Count Three could not pass muster, since Count Three rests in its entirety on the incorporated-by-reference allegations underpinning Count One (§ 1962(a)) and Count Two (§ 1962(c))—allegations that I had found insufficient as a matter of law.

*Shearin,* which sustains a § 1962(d) claim in the absence of a viable claim under any of the substantive sub-sections of § 1962, is a concrete realization of the possibility adverted to from the bench—namely, that a conspiracy count unchaperoned by a substantive count can make its way as a proper pleading. But, given what I have found to be the insufficiency of Counts One and Two, *Shearin* does not suffice to convert plaintiffs' Count Three into a viable § 1962(d) allegation that defendant and "other persons presently known and unknown" conspired to violate § 1962(a) or (c), to plaintiffs' detriment. Indeed, Count Three does not undertake to allege that plaintiffs were injured by reason of the asserted violation of § 1962(d).

In *Shearin* the plaintiff alleged a violation of § 1962(d), and further alleged injury from that conduct. Therefore, Shearin's allegation was that she was fired to further a conspiracy to violate § 1962(a), (b) and (c), for which she had standing to sue pur-

---

1. Plaintiffs contend that *Rose* does not place specific requirements on the pleading of a § 1962(a) claim, but merely requires that an injury by reason of investment be alleged. However, the Third Circuit in *Rose* held that the mere use of talismanic language is not sufficient; plaintiffs must assert a cognizable claim. When asked to assert the nature of the injury in oral argument, counsel for plaintiffs stated that "[defendant's] use of its resources from its 'bait and switch' to maintain itself and to grow, that the whole enterprise has been sustained, and that the enterprise in turn has caused the repeated misrepresentations to our plaintiffs ... which has caused them injury." Transcript at p. 49. Plaintiffs' counsel's statements supports defendant's argument that the 1962(a) allegation rests on the alleged predicate fraudulent activities. This theory of injury was rejected by *Rose* as patently insufficient: "section 1962(a) injury [must be] caused by the use or investment of the income in the enterprise, rather than by the predicate racketeering activity." *Id.* at 357.

suant to § 1964(c). In contrast, Count Three of the complaint in this action merely states:

24. Defendant has conspired with other persons presently known and unknown to plaintiff to violate the provisions of 18 U.S.C. §§ 1962(a) and (c) and has undertaken the acts alleged herein to effect these violations, in violation of § 1962(d).

There is not included anywhere in the complaint an allegation of injury by reason of § 1964(d). This fatal error cannot be cured by mere reference to prior averments, since Counts One and Two, the other substantive RICO counts of the complaint, were dismissed as legally insufficient. Plaintiffs' Count Three claim is therefore dismissed.

## II

■ Plaintiffs move, in the alternative, for leave to amend the complaint. In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court explained that "if the underlying circumstances relied upon by a plaintiff may be a proper subject of relief," leave to amend will be "freely given," unless it is apparent that some reason, such as futility of the proposed amendment, warrants denial of the motion. In judging the merit of a proffer to amend, the court should use the standard used when the legal sufficiency of a pleading is challenged under Rule 12(b)(6). 3 Moore's Federal Practice ¶ 15,08[4].

In the bench opinion of September 25, and in the foregoing section of this Memorandum, I have stated what I deem the deficiencies in law of Counts One and Two. The motion for leave to amend does not set forth theories of amendment that would cure the difficulties of the existing complaint. Accordingly, I will deny leave to amend with respect to Counts One and Two.

As to Count Three, it is, in light of *Shearin*, conceivable that plaintiffs might be able to frame a section 1962(d) claim notwithstanding their inability to frame claims cognizable under section 1962(a) and (c). So I will give plaintiffs leave to try.

## CONCLUSION

I conclude that the September 25 dismissal of the complaint was proper and hence that plaintiffs' motion for reconsideration should be denied.

With respect to plaintiffs' alternative motion for leave to amend the complaint, I conclude that (1) with respect to Counts One and Two the motion should be denied, and (2) with respect to Count Three the motion should be granted, provided that any such amended complaint is filed no later than Wednesday, November 29. If plaintiffs do file an amended complaint, they may re-allege their pendent state law claims.