PRINCETON ECONOMICS GROUP, INC. on behalf of itself and all others similarly situated, Plaintiffs,

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY, Defendant.

Civ. A. No. 90–2476.

United States District Court, D. New Jersey.

June 26, 1991.

Allyn Z. Lite, Goldstein Till Lite & Reiken, Newark, N.J., and Robert J. Berg, Wolf Popper Ross Wolf & Jones, New York City, for plaintiffs.

Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for defendant.

## OPINION

LECHNER, District Judge.

This is an action brought by plaintiff Princeton Economics Group, Inc. ("Princeton Economics"), a New Jersey corporation which provides economic consulting services, against defendant American Telephone & Telegraph Company ("AT & T") for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and New Jersey statutory and common law. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331.

AT & T moves for summary judgment on Count I of the complaint, the RICO claim and the only federal cause of action asserted in the complaint, and for dismissal of the remaining six state law counts for lack of jurisdiction. In addition, AT & T moves for sanctions against Princeton Econom-

ics.[1] For the reasons which follow, the motion of AT & T for summary judgment is granted; the motion for Rule 11 sanctions is denied.

### Facts

On 20 June 1990, Princeton Economics filed the instant action on behalf of itself and on behalf of a class comprised as follows:

> All persons situated in the State of New Jersey who purchased the Spirit System, sold, or marketed by defendant AT & T, or any of its subsidiaries, divisions, or affiliates, between April 21, 1987 and June 19, 1990 (the "Class Period". Excluded from the Class are defendant AT & T, its subsidiaries, divisions, or affiliates, and its officers and directors.

Complaint, ¶ 13. The essence of the Complaint is the alleged failure of AT & T's Spirit Communications System (the "Spirit System"), a telephone system designed for small business, to function as represented by AT & T. *See, e.g., id.,* ¶ 2. Specifically,

[1]. In support of its motion for partial summary judgment and for sanctions, AT & T submitted: the Brief of AT & T in Support of Its Motion for Summary Judgment and Sanctions (the "Moving Brief"); the Reply Brief of AT & T in Further Support of its Motion for Summary Judgment and Sanctions (the "Reply Brief"); and the Declaration of Daniel R. Lindemann, counsel for AT & T, and the Class Action Complaint (the "Complaint"), attached thereto as Exhibit A, the Answer and Separate Defenses of Defendant American Telephone & Telegraph Company, attached thereto as Exhibit B, the Defendant's First Set of Interrogatories to Plaintiff Princeton Economics Group, Inc. (the "AT & T First Set of Interrogatories"), attached thereto as Exhibit C, the Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff (the "Princeton Economics Response to the AT & T First Set of Interrogatories"), attached thereto as Exhibit D, the 9 November 1990 letter from Frederick L. Whitmer, counsel for AT & T ("Whitmer"), to Robert J. Berg, Esq., counsel for Princeton Economics ("Berg") (the "9 November 1990 AT & T Letter to Princeton Economics"), attached thereto as Exhibit E, the 28 November 1990 Pretrial Scheduling order, attached thereto as Exhibit F, the 20 December 1990 Pretrial Scheduling Order (the "20 December 1990 Order"), attached thereto as Exhibit G and the 2 May 1990 letter from AT & T to Princeton Economics, attached thereto as Exhibit H.

In opposition to the motion for partial summary judgment and for sanctions, Princeton Economics submitted: the Brief in Opposition to Defendant's Motion for Summary Judgment and Sanctions (the "Opposition Brief"); and the affidavit of Allyn Z. Lite Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (the "Lite Aff."), and the AT & T press release, dated 27 April 1987, attached thereto as Exhibit 1, the April 1987 issue of the AT & T Shreveporter newspaper, attached thereto as Exhibit 2, the AT & T newswire release, dated 27 April 1987, attached thereto as Exhibit 3, a Wall Street Journal article, dated 22 April 1987, attached thereto as Exhibit 4, AT & T's Spirit System sales brochure (the "Spirit System Brochure"), attached thereto as Exhibit 5, the chart detailing the number of Spirit Systems sold, dated 29 January 1991, attached thereto as Exhibit 6, the excerpts from the AT & T Spirit System Feature Operation Specification, dated 28 October 1985, attached thereto as Exhibit 7, the 24 July 1987 AT & T memorandum to the Spirit Product Team, attached thereto as Exhibit 8, the 14 July 1987 AT & T memorandum to the Spirit Product Team, attached thereto as Exhibit 9, the AT & T Product Information Bulletin, dated 28 November 1988 (the "28 November 1988 AT & T Bulletin"), attached thereto as Exhibit 10, the 20 April 1990 AT & T memorandum to all managers, attached thereto as Exhibit 11, the First Amended Complaint in *Prudential Ins. Co. v. United States Gypsum,* 711 F.Supp. 1244 (D.N.J.1989) (the *"Prudential* Complaint"), attached thereto as Exhibit 12, the 20 November 1990 letter from Berg to Whitmer, attached thereto as Exhibit 13, the slip opinion of the Third Circuit in *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406 (3d Cir.1991), attached thereto as Exhibit 14, the Plaintiff's First Request for Production of Documents to Defendant (the "Princeton Economics Document Production Request"), attached thereto as Exhibit 15, AT & T's Responses and Objections to Plaintiff's First Request for Production of Documents to Defendant (the "AT & T Response to Princeton Economics Document Production Request"), attached thereto as Exhibit 16, the 3 October 1990 letter from Allyn Z. Lite, Esq., counsel for Princeton Economics, to Whitmer, attached thereto as Exhibit 17, the 22 October 1990 letter from Berg to Whitmer, attached thereto as Exhibit 18, the 9 November 1990 letter from Whitmer to Berg, attached thereto as Exhibit 19, the 15 November 1990 letter from Berg to Whitmer, attached thereto as Exhibit 20, the 20 November 1990 letter from Whitmer to Berg, attached thereto as Exhibit 21, the 20 November 1990 letter from Berg to Whitmer, attached thereto as Exhibit 22, the 21 November 1990 letter from Whitmer to Berg, attached thereto as Exhibit 23, the 30 January 1991 letter from Berg to Daniel R. Lindemann, Esq., counsel for AT & T ("Lindemann"), attached thereto as Exhibit 24, the 13 February 1991 letter from Lindemann to Berg, attached thereto as Exhibit 25, the 27 February 1991 letter from Berg to Lindemann, attached thereto as Exhibit 26 and the 8 March 1991 letter from Lindemann to Berg, attached thereto as Exhibit 27.

it is alleged the "conference calling" feature of the Spirit System does not function as promised by AT & T. *Id.* The Complaint states:

> Defendant AT & T fraudulently marketed and sold the Spirit System throughout the Class Period by knowingly concealing from prospective purchasers the fact that due to serious technical problems and limitations, the Conference Calling feature does not work adequately to permit high-quality teleconferencing with multiple outside parties. Consequently, purchasers of the Spirit System, who thought they were buying a high-quality, full-service, small business telephone system, were duped by AT & T's misrepresentations, false and misleading statements, and omissions of material fact about the Spirit System into buying a telephone system whose highly-promoted and highly-desired Conference Calling feature was and is unsuitable for business use.

*Id.*

The Complaint alleges that in early 1987, AT & T implemented a plan to revitalize its small business segment, which marketed telephone communications systems to small businesses, by introducing the Spirit System, an updated version of its previously existing Merlin System. *Id.* ¶ 22. The Complaint alleges AT & T disseminated a press release on 21 April 1987 (the "21 April 1987 Press Release") announcing the introduction of the Spirit System and the Merlin Plus System. *Id.*, ¶ 24. The Complaint quotes from the 21 April 1987 Press Release as follows:

> "The addition of the new Spirit and Merlin product lines makes AT & T the only major company with a two-tier product family serving the two to 80–line market.... These new products provide our customers with the tools to control costs and run their businesses. They also enable customers to expand and customize their communications systems as their businesses change and expand.
>
>    *    *    *    *    *    *
>
> The Spirit [S]ystems have built-in features previously available only on larger and more expensive office systems. *Standard features include* 'hands-free answer on intercom' to page or get information quickly from another employee, *conference calling of up to four persons at one time,* one-button speed dialing of pre-programmed telephone numbers, and restricted calling capability....
>
>    *    *    *    *    *    *
>
> AT & T's General Business System products are manufactured by AT & T's facilities in Shreveport, La., and Denver, and backed by the GBS development organization and AT & T Bell Laboratories. *These products offer small businesses the quality and reliability that go with the AT & T name.*"

*Id.,* ¶ 24 (emphasis in original); *see also* 21 April 1987 Press Release at 2–3.

In addition, the Complaint alleges AT & T mailed Princeton a copy of the Spirit System Brochure and on information and belief mailed such brochure to other members of the Class. *Id.,* ¶ 25. The Complaint alleges the Spirit System Brochure stated:

> "Conference Calling is another valuable business feature that's standard on the SPIRIT System. It allows you to have a conference of up to four parties at one time, whether inside or outside the office. It's extremely efficient when making those group decisions."

*Id.,* ¶ 30; *see also* Spirit System Brochure at 3. The Brochure further stated:

> "Your SPIRIT Communications System is fully backed by AT & T—world leader in the development and production of communications equipment for business. This means full service and support by our own nationwide network of AT & T technicians."

Complaint, ¶ 31; *see also* Spirit System Brochure at 3.

The Complaint alleges that AT & T continued to tout the Spirit System even while it knew that it was defective and that AT & T fraudulently concealed the defectiveness of the Spirit System. The Complaint states:

While continuing to tout the availability, utility, and quality of the Conference Calling feature of its Spirit System to customers, AT & T has known since November 28, 1988 at the very latest ... that the Conference Calling feature on the Spirit System has serious technical problems which do not permit high-quality conferencing with multiple outside parties.... Throughout the Class Period, AT & T has known and has fraudulently concealed from consumers the fact that the far-end parties on a conference call arranged through the Spirit System cannot hear each other well enough to conduct business conversations.... Plaintiff and the other members of the Class found defendant's claims material in making their purchasing decisions and relied upon defendant's false and misleading claims concerning the Spirit System and its Conference Calling feature.... As a result of defendant AT & T's false and misleading claims and omissions of material fact regarding the Spirit System and its Conference Calling feature, plaintiff and the other members of the Class purchased the Spirit System and they have not been able to use the Spirit System for the purposes for which they intended. Consequently, plaintiff and the others members in the Class have suffered damages.

Complaint, ¶¶ 32, 34, 35, 37.

The Complaint states that it is inferred from a 28 November 1988 AT & T Bulletin issued to AT & T employees that AT & T was aware of the defectiveness of the conference calling feature. *Id.*, ¶ 32; *see also* 28 November 1988 AT & T Bulletin. The 28 November 1988 AT & T Bulletin states: " 'Under some conditions, the far-end parties on a conference call cannot hear each

other very well.' " *Id.* The Complaint further quoted the 28 November 1988 AT & T Bulletin as follows: " 'Some of the loss is within the Central Office and some may be attributed to the switched network. *The rest of the loss is contributed by the SPIR-IT controller which has a 3DB loss on each conferenced trunk.*' " Complaint, ¶ 32; *see also* 28 November 1988 AT & T Bulletin. The Complaint states the 28 November 1988 AT & T Bulletin further provided: " 'Customers should be aware that ... *high-transmission can't be guaranteed.* For those customers for whom high-quality conference transmission is critical, the MERLIN products should be recommended, since some signal boosting takes place. If MERLIN is not appropriate, Alliance Teleconferencing Services should be recommended.' " Complaint, ¶¶ 32–33; *see also* 28 November 1988 AT & T Bulletin.

In Count I (the "RICO Count"), the Complaint alleges the conduct of AT & T relative to the marketing of the Spirit System violated RICO, 18 U.S.C. § 1962(a).[2] The Complaint alleges: "The AT & T enterprise reinvested in itself and/or used in its operations income derived, directly or indirectly, through its manufacture, marketing, and sale of the Spirit System. In order to obtain such income, the AT & T enterprise carried on a 'pattern of racketeering' in that it perpetrated a scheme which included committing numerous acts of mail fraud and wire fraud...." Complaint, ¶ 42. It continues:

The scheme perpetrated by the AT & T enterprise involved intentionally misrepresenting the Spirit System as a high-quality, full-service telephone communications system fit for use by small business for, among other things, conference calling with up to four parties at one

---

**2.** 18 U.S.C. § 1962(a) provides in relevant part: It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

*Id.* Racketeering activity is defined in the RICO statute to include mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). In addition, "pattern of racketeering activity" is defined as follows: "[A]t least two acts of racketeering activity, ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity...." *See* 18 U.S.C. § 1961(5).

time, whether inside or outside the office. The purpose of this scheme was to increase AT & T's sales, profits, and market share by inducing the many potential purchasers of the Spirit System to purchase the system without regard for the fact that the system could not acceptably perform the conference calling function. In furtherance of this scheme, the AT & T enterprise repeatedly used the United States mails and interstate wires.

*Id.*, ¶ 43. The Complaint alleges:

As part of its scheme to induce potential purchasers of the Spirit System to buy the system, defendant AT & T intentionally failed to disclose and concealed knowledge about the serious technical limitations of the Spirit System's Conference Calling feature which rendered the feature inadequate and unacceptable for use, rendered AT & T's representations that the Spirit System is a high-quality, full-service, small business telephone system false and misleading, and which limitations would cause damages to plaintiff and to the other members of the Class.

*Id.*, ¶ 48. Finally, the Complaint alleges injury, causation and standing as follows:

*Plaintiff and the other members of the Class have sustained injuries to their businesses and property because they relied on the fraudulent misrepresentations, misleading statements, and omissions of defendant AT & T in their purchases of the Spirit System* manufactured, marketed, and sold by defendant AT & T. *These injuries were directly and proximately caused by defendant AT & T's use and investment of income* derived from the pattern of racketeering activity in the AT & T enterprise, *which use and investment allowed the AT & T enterprise to continue its operations, and allowed defendant AT & T to continue its fraudulent and misleading advertising.*

*Id.*, ¶ 49 (emphasis added).

AT & T answered the Complaint in August 1990 and served on Princeton Economics its First Set of Interrogatories. Moving Brief at 3. Princeton Economics responded to the AT & T First Set of Interrogatories

in October 1990, "largely objecting to the contention interrogatories." *Id.* In many of the responses of Princeton Economics to the Interrogatories of AT & T relative to the RICO Count, or interrogatory numbers 36–63, Princeton Economics prefaced its response by stating:

Plaintiff objects to this Interrogatory on the ground that it calls for a legal conclusion or the application of law to facts.... Plaintiff further objects to this Interrogatory on the ground that it is premature in calling for information virtually entirely in the possession of defendant and which has not yet been made available to plaintiff through relevant discovery.

*See, e.g.*, Princeton Economics Response to the AT & T First Set of Interrogatories, numbers 36–63. Following this objection, many of the responses of Princeton Economics to interrogatory numbers 36–63 then go on to provide information in response to the interrogatory. The response is prefaced by the phrase, "[w]ithout waiving the foregoing objections...." *See*, Princeton Economics Response to the AT & T First Set of Interrogatories, *e.g.*, nos. 36–39, 41–44, 46, 49, 51 55, 56, 59–62.

In November 1990, counsel for the parties met to discuss discovery matters, including Princeton Economics' Responses to the AT & T First Set of Interrogatories. Moving Brief at 3. On 29 November 1990, Magistrate Judge Ronald J. Hedges held a pre-trial scheduling conference with the parties. *Id.* On the same date, a pretrial scheduling order was filed by Magistrate Judge Hedges which characterized the objections of Princeton Economics to the AT & T interrogatories in a hand-written note as follows: "Plaintiff's answers of 'premature' deemed to be 'insufficient information to answer pending further discovery.'" 29 November 1990 Order.

At a subsequent pre-trial scheduling conference held on 20 December 1990, Magistrate Judge Hedges, *sua sponte*, informed the parties that AT & T was directed to file and serve a motion on the issue of federal jurisdiction. Opposition Brief at 3. Magistrate Judge Hedges then entered a second pre-trial scheduling order directing AT & T

to file a motion directed at the federal cause of action in the Complaint. Moving Brief at 4; Opposition Brief at 3. The 20 December 1990 Order stayed discovery pending further order, except that the 20 December 1990 Order required AT & T to produce documents related to class certification issues and a limited amount of documents in response to general discovery requests.[3] Reply Brief at 2 n. 1; opposition at 3. The 20 December 1990 Order provided: "Defendant to turn over doc-

**3.** The Princeton Economics Document Production Request, dated 20 August 1990, requested twenty-nine categories of documents, including the following categories of documents:

> 4. All press releases, reports, statements, and communications that concern, relate to, or refer to small business telephone systems and the communication needs of small business, prepared by or for AT & T, including all drafts or markups thereof, whether or not actually disseminated, and specifically including but not limited to all such documents that concern, relate to, or refer to the Spirit System.
>
> 5. All studies, reports, research reports, analyst reports, press releases, newspaper or magazine articles, trade journal reports, and news service reports that concern, relate to, or refer to small business telephone systems, and specifically including but not limited to all such documents that concern, relate to, or refer to the Spirit System, whether or not prepared by or for AT & T.
>
> 6. All product reviews, tests, analyses, recommendations, evaluations, or other such documents that concern, relate to, or refer to the Spirit System, whether or not prepared by or for AT & T.
>
> 7. All documents which compare, contrast, or discuss the Spirit System with respect to any other telephone systems.
>
> 8. All documents that contain, concern, relate to, or refer to actual and/or projected or forecasted sales, orders, revenues, expenses, earnings, profits, inventories, or cash flow for small business telephone systems manufactured, developed, promoted, sold, leased or marketed by AT & T, specifically including but not limited to the Spirit System.
>
> 9. All documents that contain, concern, relate to, or refer to AT & T's marketing plans, sales plans, business plans, advertising plans, promotional plans, research and development plans, and strategies including but not limited to all such documents that concern, relate to or refer to the Spirit System.
>
> \* \* \* \* \* \*
>
> 12. All documents that concern, relate to, or refer to product returns or requests for product returns of the Spirit System.
>
> 13. All documents that concern, relate to, or refer to complaints about problems or dissatisfaction with the Spirit System, whether written by customers, lessees, distributors, or their agents, by AT & T's employees, agents service technicians, customer service personnel, research personnel, technical personnel, sales personnel, by any independent research or testing organization, or by any research or testing organization retained by AT & T.
>
> \* \* \* \* \* \*
>
> 22. All documents that contain, discuss, describe, concern, relate to, or refer to the conference call feature of the Spirit System, specifically including but not limited to all complaints, comments, or inquiries made to or by AT & T, all service, repair, or maintenance records regarding the conference call feature, all sales materials, promotional materials, or marketing materials regarding the conference call feature, all laboratory tests, experiments, or measurements regarding the conference call feature, and all documents that concern, relate to, or refer to any changes in the specifications, performance, or function of the conference call feature.
>
> 23. All documents that contain, concern, relate to or refer to sales or leases of the Spirit System in New Jersey, including but not limited to all sales or lease memos, notes, technical assistance reports, marketing memos, sales trip reports, sales records, invoices, leases, computer printouts, bills of lading, freight bills, shipping orders, or other documents of transfer.

Princeton Economics Document Production Request. In response to the foregoing requested categories of documents, with the exception of category numbers 12 and 23, AT & T issued the following blanket objection:

> AT & T objects to this Request on the grounds that it is overly broad, unduly burdensome, oppressive and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

AT & T then indicated that "[w]ithout waiving the foregoing objections, and subject thereto, upon the execution of a protective order, AT & T will produce such documents as respond [sic] to this Request...." *See* AT & T Response to Princeton Economics Document Production Request, response numbers 4, 5, 6, 7, 8, 9, 13 and 22. As to category numbers 12 and 23, AT & T issued the blanket objection only and did not indicate it would produce any documents. AT & T additionally objected to category numbers 2, 14, 15, 19, 21, 23, 27, 28 and 29 for various reasons and did not indicate it would provide any response to those requested categories of documents.

In light of the stay of discovery ordered in the 20 December 1990 Order, it appears actual production of documents as to the categories to which AT & T indicated it would respond has largely not yet begun. *See infra* at 11–14.

uments which are nonprivileged by 12/24/90. Privileged documents to be turned over by 1/28/91." *Id.*

In support of its motion for partial summary judgment, AT & T contends the RICO Count should be dismissed because the RICO statute is unconstitutionally vague as applied to the facts of this case. Specifically, AT & T asserts the "pattern of racketeering" definition is unconstitutionally vague as applied. Moving Brief at 10.[4]

In addition, AT & T argues Princeton Economics does not have standing to bring an action predicated on 18 U.S.C. § 1962(a) because it has not sufficiently pleaded an "investment-related injury" to allege standing. Moving Brief at 19. AT & T argues the allegations as to injury are not sufficient to create standing because Princeton Economics was allegedly injured by one event—its purchase of the Spirit System. *Id.* at 20. AT & T contends allegations that the proceeds of one incident allowed the enterprise to continue committing other incidents do not state an injury to confer standing. *Id.*

In support of its motion for sanctions, AT & T asserts Princeton Economics filed the instant complaint without factual support for the RICO Count in violation of Fed.R.Civ.P. 11.[5] AT & T points to the Princeton Economics Response to AT & T First Set of Interrogatories as evidence for such lack of factual support for the RICO Count.

■ In opposition to the motion for partial summary judgment, Princeton Econom-

ics argues that summary judgment should not be granted where, as here, a party has received virtually no discovery. Opposition Brief at 10. Princeton Economics contends:

> In this case, the bulk of the facts underlying plaintiff's substantive claims are within the complete control and knowledge of defendant and its employees. Plaintiff's discovery has been stayed by Judge Hedges except for a limited amount of document discovery.... In class action cases like this, when discovery has only been taken as to the class issues, and the evidence to support the substantive claims is, "as it is usually in these cases, in the hands of the defendants ... summary judgment should not be granted without the opportunity for discovery on the [substantive] issues." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086 [98 S.Ct. 1280, 55 L.Ed.2d 791] (1978).

Opposition Brief at 12–13. Princeton moves for a continuance of the partial summary judgment motion pursuant to Fed. R.Civ.P. 56(f).

In a Rule 56(f) affidavit, Allyn Z. Lite ("Lite"), counsel for Princeton Economics, states Princeton Economics served AT & T with the Princeton Economics Document Production Request on 27 August 1990 and received the AT & T Response to the Princeton Economics Document Production Request on 26 September 1990, in which AT & T conditioned a response to the Doc-

---

**4.** Because the AT & T motion is granted on an alternative basis, it is not necessary to address the issue as to whether RICO is unconstitutionally vague as applied to the facts of this case.

**5.** Fed.R.Civ.P. 11 provides in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well

grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other arty or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. *Id.*

ument Production Request on entry of a confidentiality agreement. Lite Aff., ¶ 5. On 3 October 1990, Lite requested that counsel for AT & T forward to him a draft confidentiality agreement. *Id.,* ¶ 6.

The parties had still not agreed on the language of the confidentiality agreement when they met with Magistrate Judge Hedges for a Pretrial Scheduling Conference on 28 November 1990. The parties were directed by Magistrate Judge Hedges to work out the language of the confidentiality agreement themselves. *Id.,* ¶ 14. When the parties had still not done so by the time the 20 December 1990 Pretrial Scheduling Conference was held, Magistrate Judge Hedges entered a confidentiality order on that date. *Id.,* ¶ 15. Magistrate Judge Hedges limited the scope of document production to issues of class certification pending further court order and ordered AT & T to address a motion to the "federal cause of action" by 28 January 1991. *Id. See also* 20 December 1990 Order.

In light of these circumstances, Lite states:

> Pursuant to Rule 56(f), plaintiff Princeton Economics respectfully requests that the pending motion for summary judgment be denied. The merits discovery stay presently in effect and AT & T's inadequate document production have prevented plaintiff from obtaining such testimony and documentary evidence as would allow plaintiff to present genuine issues of material fact which are in dispute between the parties, thereby making summary judgment inappropriate at this juncture.

Lite Aff., ¶ 24. He states the issues outstanding with respect to discovery include:

> b. AT & T's marketing and advertising programs for small business telephone systems, including the Spirit System;
>
> c. technical defects within the Conference Calling feature of the Spirit System and AT & T's knowledge of those defects prior to and during the marketing of the Spirit System;
>
> d. the history of complaints about the Conference Calling feature of the Spirit

System and requests for refunds or product returns of the Spirit System;

> e. AT & T's internal and external responses to technical difficulties within the Conference Calling feature of the Spirit System;
>
> f. AT & T's internal and external responses to technical difficulties within the Conference Calling feature of the Spirit System;
>
> g. AT & T's and/or the General Business Systems Unit's business plans, financial plans, research and development plans, strategic plans, and projections regarding small business telephone systems, including the Spirit System;
>
> h. AT & T's financial structure, including the interrelationship between the General Business Systems Unit and AT & T; and
>
> i. AT & T's financial documents regarding its small business telephone systems, including its financial statements, budgets, pro formas, sales reports, earning statements, profit statements, cash flow reports, and other financial reports with regard to the sale of small business telephone systems, including the Spirit System.

*Id.*

Attached to the Lite affidavit are a number of AT & T promotional materials, articles, internal memoranda and specifications concerning the Spirit System. With respect to these documents, Princeton Economics states only in brief: "[T]he minimal number of documents produced by AT & T, after [Magistrate] Judge Hedges ordered their production on December 20, 1990, clearly demonstrate the existence of genuine issues of material fact as to what AT & T knew about the capability of the Spirit System prior to and during its marketing to plaintiff and members of the class." Opposition Brief at 17.

Princeton Economics argues that if a continuance is not granted pursuant to Fed.R.Civ.P. 56(f), the court should limit its analysis to examining the sufficiency of the allegations of the complaint pursuant to the standard applicable under Fed.R.Civ.P. 12(b)(6). Opposition Brief at 18. It then

states that as to the general sufficiency of its allegations, it is not only "classic" racketeering, or that engaged in by organized crime, which is subject to liability under RICO. Opposition Brief at 19–20. Princeton Economics asserts that its allegations that AT & T received income from racketeering activity and reinvested those funds into the AT & T enterprise, and its allegations as to the nature of the racketeering activity, are sufficient to state a claim under 18 U.S.C. § 1962(a). Opposition Brief at 22–23.

As to the question of standing, Princeton Economics asserts its allegations that AT & T reinvested money derived from a pattern of racketeering to perpetuate the AT & T enterprise and to enable it to continue the racketeering activity are sufficient to confer standing. *Id.* at 28.

In opposition to the motion for sanctions, Princeton Economics refers to its Response to the AT & T First Set of Interrogatories and states: "Before the Complaint was filed, plaintiffs also possessed documentary evidence and admissions by AT & T personnel that, notwithstanding AT & T's knowledge of the defects, AT & T continued and has continued to use the mails and interstate wires to market the Spirit System, emphasizing the Conference Calling feature as one of the most important features of this purportedly sophisticated, high-quality, full-service small business telephone system." *Id.* at 42. It states that as to whether AT & T reinvested income from racketeering activity so as to violate 18 U.S.C. § 1962(a), such information is "solely within the possession of AT & T and must be discovered." *Id.* at 43.

*Discussion*

While AT & T moves for summary judgment, it does so while discovery requests of Princeton Economics are outstanding and while a stay on discovery is pending. In addition, Princeton Economics has submitted a Rule 56(f) affidavit in which it states that through the discovery yet to take place it would seek to elicit, *inter alia*, information on communications by AT & T with the public. Such information would appear to be relevant to whether

such communications were fraudulent and constituted predicate acts under RICO. In addition, the Rule 56(f) affidavit states information as to cash flow of proceeds earned from the marketing of the Spirit System would be sought. Such information would also appear to be relevant to whether proceeds from the marketing of the Spirit System was reinvested in the alleged RICO enterprise.

Where discovery requests of the party opposing summary judgment are outstanding, where the facts are in the control of the moving party and where a Rule 56(f) affidavit has been submitted, the granting of summary judgment is frowned upon by courts. As the Third Circuit has stated: "[W]e have said that where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977) (quoting *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir.1973)). *See also Sames v. Gable*, 732 F.2d 49, 51–52 (3d Cir.1984) (reversible error for district court to grant summary judgment when pertinent discovery requests remained unanswered by moving part).

While AT & T fashions its motion as a motion for summary judgment, its legal arguments concerning the issue of the standing of Princeton Economics are not based on outside submissions. Indeed, Princeton Economics has argued that "the Court should limit its analysis to examining the sufficiency of the allegations of the Complaint." Opposition Brief at 18. In addition, a showing by Princeton Economics that it has been injured by AT & T's alleged violation of 18 U.S.C. § 1962(a) does not appear to depend on its access to information within the control of AT & T.

It is presumed Princeton Economics has access to information concerning the nature of its injury. Moreover, the outstanding Document Production Request of Princeton Economics is not addressed to the nature of the injury. Therefore, the motion for summary judgment is decided under the standard of review used in decid-

ing motions to dismiss for failure to state a claim. This matter will be addressed as a motion pursuant to Rule 12(b)(6). *See Bogosian,* 561 F.2d at 444 (district court entered summary judgment against plaintiff prior to completion of discovery, but properly did so by limiting itself to analysis of the sufficiency of the allegations of the complaint; on review, Third Circuit reviewed entry of summary judgment under standard used for motions to dismiss).

### 1. *Standard of Review*

A court may grant a motion to dismiss for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). In deciding such a motion to dismiss for failure to state a claim, all allegations of the plaintiff must be taken as true and viewed in the light most favorable to the plaintiff. *Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 1921–22, 64 L.Ed.2d 572 (1980); *Markowitz,* 906 F.2d at 103; *Melikian v. Corradetti,* 791 F.2d 274, 277 (3d Cir.1986); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984).

The Supreme Court has stated that "RICO is to be read broadly," in light of "Congress' ... express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes' ... [which] are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima, S.P.L.R. v. Imrex Co.,* 473 U.S. 479, 497–98, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985) (quoting Pub.L. 91–452, section 904(a), 84 Stat. 947). *See also Northeast Women's Center, Inc. v. McMonagle,* 868 F.2d 1342, 1348 (3d Cir.) ("[W]e are not free to read additional limits into RICO once a plaintiff has made out all of the elements required for a finding of liability under the statute's

explicit provisions."), *cert. denied,* —— U.S. ——, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989).

### 2. *Standing*

■ Under 18 U.S.C. § 1962(a), it is illegal to use or invest income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce. *See* 18 U.S.C. § 1962(a); *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 233, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989). A person who has been injured by such a violation may bring a civil cause of action under 18 U.S.C. § 1964(c), which provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

There is a split among the circuits on the issue of whether standing to sue for a violation of section 1962(a) is sufficiently stated by alleging an injury caused by predicate acts or whether it is necessary to allege an injury caused by the actual investment or use of the proceeds of the racketeering activity. The majority view, and that adopted by the Third Circuit, is that in order to have standing to sue for violations of section 1962(a), a plaintiff must show injury by reason of the use or investment of racketeering income. *See, e.g., Quaknine v. MacFarlane,* 897 F.2d 75 (2d Cir.1990); *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485 (6th Cir.1990); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147 (10th Cir.) *cert. denied,* —— U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *Rose v. Bartle,* 871 F.2d 331 (3d Cir.1989). *But see Busby v. Crown Supply, Inc.,* 896 F.2d 833, 836–40 (4th Cir.1990) (finding that injury from predicate acts is sufficient to give rise to standing to sue for violations of 1962(a)).

The Third Circuit has adopted the majority view that standing is created only by an injury caused by the investment or use of proceeds from racketeering activity.

Princeton Economics does not contest this requirement. *See* Opposition Brief at 26 ("[A] plaintiff must allege not only the elements of § 1962(a), but also that the RICO violation caused injury in plaintiff's business or property"). In *Rose v. Bartle*, 871 F.2d at 357–58, the Third Circuit held: "[R]equiring the allegation of income use or investment injury 'is consistent with both the literal language and the fair import of the language [of section 1962(a)].'" *Id.* at 358 (citation omitted). In *Rose*, the court found that the plaintiff adequately alleged use or investment of proceeds from racketeering activity but found the plaintiff did not sufficiently allege standing because the complaint contained no allegations as to injury by virtue of the defendants' use or investment of racketeering income. *Id.* at 357. *See also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir.1990).

Courts adopting this approach find that injury caused by predicate acts of racketeering will not give rise to standing to sue for a violation of section 1962(a). In *Quaknine*, a number of investors sued defendants who had allegedly induced them to enter into a number of financial transactions, to their loss, through allegedly false representations. The plaintiffs sued the defendants under section 1962(a), alleging predicate acts consisting of securities fraud. The Second Circuit held the RICO claim was properly dismissed by the district court because the complaint did not allege facts "asserting injury by reason of defendants' investment of racketeering income...." *Quaknine*, 897 F.2d at 83.

In *Grider*, the plaintiff held a working interest in a group of oil and gas wells and sued the well operators for violations of section 1962(a). The plaintiff alleged that the defendants had engaged in a scheme to reduce his profit by, *inter alia*, illegally venting natural gas, stealing natural gas from the wells for drilling operations, selling gas without paying him the appropriate revenue and unlawfully fixing prices. As to a second scheme, the plaintiff alleged the defendants, *inter alia*, breached their

fiduciary duty to him, conspired to fix prices, failed to pass on his share of rebates and discounts and withheld his share of production revenues. The plaintiff alleged the defendants carried out these schemes by engaging in predicate acts of mail fraud. In rejecting an approach to standing whereby injury caused by predicate acts was deemed sufficient and in denying the plaintiff standing, The Tenth Circuit held:

[W]e find no justification for disregarding the clear language of either section 1962(a), which prohibits the use or investment of income from racketeering activity, or section 1964(c), which requires injury by reason of such a violation. Accordingly, we hold that, because [the plaintiff] has failed to allege any facts showing injury from the use or investment of racketeering income, he has no standing to assert a claim for damages based on a violation of section 1962(a).

*Grider,* 868 F.2d at 1150–51.

Similarly, in *Craighead*, an investor sued an investment broker after the investment broker invested funds to the investor's loss, without the investor's authorization. The investor sued the company with which the investment broker was employed for violations of 1962(a), alleging predicate acts of mail fraud. The Sixth Circuit held: "[The plaintiffs] have not alleged injuries stemming directly from the defendants' alleged use or investment of their illegally obtained income. Unlike section 1962(c), section (a) requires such a *separate and traceable injury,* and plaintiffs have alleged only injuries traceable to the alleged predicate acts." *Craighead,* 899 F.2d at 494 (emphasis added).

The majority of district courts within the Third Circuit have likewise taken the view that where the plaintiff's injuries are traceable only to the predicate acts, the plaintiff has not sufficiently alleged standing to sue for violations of section 1962(a). In *Zimmer v. Gruntal & Co.*, 732 F.Supp. 1330 (W.D.Pa.1989), the plaintiff investors sued an investment company which invested their money in real estate development to their loss. *See id.* at 1334. The court

found the plaintiffs had no standing to sue, stating:

> We carefully have reviewed the complaint and we find no express or implied allegations that plaintiffs were injured by defendant Gruntal's investment in, or income derived from, [the real estate developments] or Gruntal. Likewise, plaintiffs' RICO Case Statement indicates that their only injury arises from their loss of investments and income into Woodcrest....
>
> Because the only alleged injury, *i.e.,* loss of investments and income, was complete upon the taking of plaintiffs' funds, we agree with defendants that plaintiffs have not alleged an injury arising from defendants' subsequent use of the proceeds from these alleged racketeering activities. Without the requisite causal link between the investment and plaintiffs' injury, the Section 1962(a) claims are insufficient as a matter of law and shall be dismissed.

*Id.* at 1334.

A recent case presents facts closely analogous to the instant case. In *Penn v. Alamo Rent–A–Car, Inc.,* 725 F.Supp. 1339 (E.D.Pa.1989), three plaintiffs brought a complaint in which they alleged they were members of a class of persons who rented cars from Alamo Rent–A–Car, Inc. ("Alamo"). The complaint essentially alleged consumer fraud by alleging that potential customers who telephoned Alamo were given one price for a rental car over the telephone and another when they appeared in person to pick up the rental car.

As in the instant case, the plaintiffs in *Penn* contended they alleged an injury sufficient to create standing to sue for a section 1962(a) violation by alleging that Alamo reinvested funds made from racketeering activity into its business, thereby strengthening and perpetuating the fraudulent scheme. In making such an argument, the plaintiffs placed heavy reliance on *Blue Cross of Western Pennsylvania v. Nardone,* 680 F.Supp. 195 (W.D.Pa.1988), a case pre-dating the Third Circuit's decision in *Rose v. Bartle.* In *Nardone,* such allegations of injury were found sufficient to confer standing. The plaintiffs in *Penn* further argued that a finding of standing was especially warranted given their action was brought as a class action, because they alleged each investment of funds from one fraud strengthened the defendant in perpetuating fraud on other class members.

The court found the plaintiffs did not adequately allege an investment-related injury so as to have standing. The court rejected reliance on *Nardone,* stating it was "simply out of line with ... the authoritative determination by the Court of Appeals in *Rose v. Bartle." Penn,* 725 F.Supp. at 1343. The court stated it was not "satisfied that the complaint ... spells out any injury to any of the named plaintiffs or other putative class members, apart from the particular injury that flowed from the predicate acts of the pattern of racketeering injury." *Id.* In addition, it found the characterization of the action as a class action did not confer standing on the named plaintiff so as to defeat dismissal because it was necessary for each class member to allege a cognizable wrong in order for the class member to have standing. *Id.* at 1343 n. 2.

Finally, in *Curley v. Cumberland Farms Dairy, Inc.,* 728 F.Supp. 1123 (D.N.J.1989), the plaintiffs filed a class action against a retail convenience store chain alleging an extortion scheme by officers of the corporation. The plaintiffs alleged low-level employees were wrongfully accused of stealing money and merchandise and forced to sign a confession under the threat of arrest and notification of family members. There, the court likewise considered the argument of the plaintiffs that they had standing because they alleged the reinvestment by the defendants of racketeering income into the enterprise permitted the enterprise to flourish and to perpetuate the alleged racketeering activity. Citing *Grider* and *Rose,* the court observed that "a plaintiff seeking civil damages for a violation of section 1962(a) must plead facts tending to show that he was injured by the use or investment of racketeering income." *Id.* at 1139. The court then determined the plaintiffs failed to allege standing, stating:

In the instant case, plaintiffs have not shown an injury sufficient to confer standing under § 1962(a). Plaintiffs' argument that they have suffered as a result of the proceeds of one incident of alleged extortion being used to pay the loss prevention specialist who commits the next alleged act of extortion falls short of the required injury. If plaintiffs' view of standing were correct, RICO plaintiffs would be required to plead no more than that the proceeds from one predicate act enabled the enterprise to continue to commit other predicate acts. This view effectively eliminates the standing requirement under § 1962(a), and the court rejects it.

*Id.* at 1139. *See also Insurance Consultants of America, Inc. Employee Pension Plan v. Southeastern Insurance Group, Inc.,* 746 F.Supp. 390, 413 n. 20 (D.N.J.1990) (plaintiffs did not have standing under section 1962(a) where they did not allege they were harmed by the investment of racketeering income).[6]

■ In the instant case, Princeton Economics asserts it has standing to sue for an alleged violation by AT & T of section 1962(a) because it was induced to purchase the Spirit System through fraudulent representations as to the conference calling capability of the Spirit System contained in the Spirit System Brochure, which it received from AT & T. More particularly, Princeton Economics alleges:

> Plaintiff and the other members of the class have *sustained injuries to their businesses and property* because they relied on the fraudulent misrepresentations, misleading statements and omissions of defendant AT & T *in their purchase* of the Spirit System....

Complaint at 49 (emphasis added). It asserts this conduct constitutes an injury by

---

**6.** In support of its contention that it has sufficiently alleged standing because it has alleged that the reinvestment of racketeering income by AT & T allowed it to perpetuate its scheme, Princeton Economics cites *Roche v. E.F. Hutton & Co., Inc.,* 658 F.Supp. 315 (M.D.Pa.1986), *aff'd without opinion,* 862 F.2d 310 (3d Cir.1988), *B.F. Hirsch, Inc. v. Enright Refining Co.,* 617 F.Supp. 49 (D.N.J.1985) and *Nardone,* 680 F.Supp. at 195, all of which pre-date *Rose v. Bartle.* In addition, Princeton Economics cites *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162 (3d Cir. 1989) for the proposition that the requisite injury may be shown by alleging injury caused by predicate acts. In *Shearin,* which involved an action brought by a former employee who alleged she was wrongfully terminated by her employer, the court stated:

> Applying the *Sedima* standard for civil RICO standing, we conclude as did the district court, that Shearin has failed to plead injury resulting from defendants' violations of sections 1962(a) or (c). The investment of unlawfully collected fees did not cause Shearin to lose her jobs. Nor did the securities and wire fraud through which the three companies ostensibly conducted their illicit enterprise.

*Id.* at 1167–68. Princeton Economics relies on this section of the *Shearin* opinion as support for the proposition that injury from predicate acts may support a finding of standing to sue for violation of section 1962(a). However, Princeton Economics misconstrues the discussion of injury from predicate acts as relating to the discussion of the alleged violation of section 1962(a), when in fact it relates to the discussion of the alleged violation of section 1962(c).

Finally, Princeton Economics relies on *Prudential Insurance Co. v. United States Gypsum,* 711 F.Supp. 1244 (D.N.J.1989). In *Prudential Insurance Co.,* it appears the defendants objected to the court granting the plaintiffs leave to amend the complaint to allege standing to sue for a violation of 1962(a), among other proposed amendments. The case does not describe the allegations as to standing which were challenged by the defendants. Princeton Economics asserts the challenged allegations as to standing alleged injury by virtue of the fact that the use or investment by the defendants of racketeering proceeds allowed the perpetuation of the racketeering scheme and submits an unsigned, unfiled copy of what it states is the challenged *Prudential* complaint as evidence for this assertion. *See Prudential* Complaint.

The *Prudential Insurance Co.* court granted the plaintiffs leave to amend but explained why it did so only as to amendments other than those concerning standing. The court did not explain why it granted leave to amend the allegations as to standing. In light of *Prudential Insurance Co.*'s lack of explanation as to its decision to allow amendment of the allegations concerning standing, and in light of its lack of description of the challenged allegations as to standing, *Prudential Insurance Co.* is of negligible assistance to Princeton Economics in supporting its argument as to the sufficiency of its standing allegations. As well, although Princeton Economics has been fully apprised of what AT & T viewed as the inadequacy of its allegations as to standing since January 1991, it has not requested an opportunity to amend its complaint. *See* note 7, *infra.*

virtue of AT & T's use or investment of racketeering income because AT & T's use or investment of proceeds from such fraudulent representations "allowed the AT & T enterprise to continue its operations, and allowed defendant AT & T to continue its fraudulent and misleading advertising." *Id.*

The allegations of Princeton Economics as to its standing to sue for a violation of section 1962(a) are precisely the type of allegations which were found to be insufficient in *Penn v. Alamo Rent–A–Car, Inc.*, 725 F.Supp. at 1339, and *Curley v. Cumberland Farms Dairy Inc.*, 728 F.Supp. at 1123. Princeton Economics does not allege injury by virtue of AT & T's use or investment of racketeering income, but rather injury by virtue of allegedly having been fraudulently induced to purchase the Spirit System. Princeton Economics has not expressly or impliedly alleged a section 1962(a) injury. It has alleged only an injury through its purchase of the Spirit System. This injury was complete upon the purchase. Princeton Economics simply has not alleged a cognizable injury from the use or investment of money obtained from racketeering. Accordingly, the section 1962(a) claim is insufficient as a matter of law. *Rose v. Bartle*, 871 F.2d at 356–580.

In addition, the only Princeton Economics allegations as to fraud perpetrated upon it by AT & T concern its receipt of the Spirit System Brochure in the mail, which contained purported fraudulent representations as to the conference calling capability of the Spirit System. *See* complaint, ¶ 25. Even taking as true Princeton Economics' allegations that AT & T's use or investment of racketeering income allowed it to continue perpetrating racketeering acts, it does not allege that it has been injured by virtue of the perpetuation of the alleged racketeering scheme. Princeton Economics alleges only one fraud, the mailing of the Spirit System Brochure, as to which it was a victim. In addition, even if it were a victim of more than one fraud, the allegation that AT & T's use or investment of racketeering proceeds allowed the perpetuation of the fraud allege no more than injury by virtue of multiple predicate acts. Such allegations do not confer standing under *Rose v. Bartle* and its progeny.[7]

Because Princeton Economics has not sufficiently alleged standing to sue for a violation of section 1962(a), it is unnecessary to address AT & T's remaining grounds for dismissal. Count I of the complaint is accordingly dismissed for failure of Princeton Economics to sufficiently allege standing to sue for a violation of section 1962(a). In addition, the remaining counts of the complaint, which are based on pendent jurisdiction to Count I, are dismissed for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1100 (D.N.J.1988) ("Where there exists no federal claim, ... the rationale for exercising pendent jurisdiction over state law claims generally does not apply.").

### 3. *Sanctions*

AT & T argues it should be awarded attorneys' fees and costs under Fed. R.Civ.P. 11 because Princeton Economics filed the instant complaint without factual support for the RICO Count. AT & T points to the Princeton Economics Re-

---

7. Princeton Economics has had ample opportunity to confront this motion. In point of fact, AT & T served its Moving Brief and supporting papers on Princeton Economics on 28 January 1991. Princeton Economics served on AT & T its opposing brief and other documents to support its opposition on 8 April 1991. AT & T prepared its Reply Brief, dated 17 May 1991, and filed its motion together with all of these briefs on 17 May 1991.

Princeton Economics in its Opposition Brief recognized plaintiffs in *Prudential Ins. Co.* moved to amend their complaint concerning a

section 1962(a) cause of action. Opposition Brief at 5. Yet at no time has Princeton Economics requested an opportunity to amend the Complaint. In fact, at oral argument on 24 June 1991 after the parties were informed they would be given "the opportunity to offer any data the parties deem necessary concerning [this] motion," counsel to Princeton Economics was asked: "Mr. Lite, anything else on behalf of [Princeton Economics]?", he responded: "No, your Honor, I think we're real comfortable with our submissions." Transcript of oral argument, 24 June 1991 at 5.

sponse to the AT & T First Set of Interrogatories as evidence for such lack of factual support for the RICO Count.

Rule 11 mandates that the signature of an attorney or a party on any paper submitted to the court constitutes a certificate by the signer that he has read the paper and "to the best of the signer's knowledge, information and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus ... streamline the administration and procedure of the federal courts." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, — U.S. —, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991) (quoting *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990)).

■ Rule 11 was amended in 1983 to give courts greater authority to impose sanctions in order to discourage wasteful and abusive tactics. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986); *Filippini v. Austin*, 106 F.R.D. 425, 431–432 (C.D.Cal.1985). Thus, the Rule provides an exception to the traditional American rule which requires each litigant to bear its own costs and attorneys' fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975); *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 193 (3d Cir.1988); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987). The Rule's primary purpose in providing for an award of attorneys' fees, however, is not "wholesale fee shifting but correction of litigation abuse." *Gaiardo*, 835 F.2d at 483. Consequently, sanctions are appropriate only in exceptional circumstances, such as when the " 'claim or motion is patently unmeritorious or frivolous.' " *Dura Systems, Inc. v. Rothbury*

*Invest., Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989) (quoting *Doering*, 857 F.2d at 194), *cert. denied*, — U.S. —, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990); *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1091 (3d Cir.1988); *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988).

■ Rule 11 motions impose an objective standard of reasonable inquiry on parties who sign papers or pleadings. *Business Guides, Inc.* — U.S. at —, 111 S.Ct. at 934–35; *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988) (citations omitted); *Lieb*, 788 F.2d at 157; *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 541 (3d Cir.1985). This is "a more stringent standard than the original good faith formula." *Eavenson*, 775 F.2d at 540. No proof of subjective bad faith is required to levy sanctions. *Lony v. E.I. Du Pont deNemours & Co.*, 935 F.2d 604 (3d Cir.1991); *Napier*, 855 F.2d at 1091.

■ Thus, "the [R]ule requires a reasonable inquiry into both the facts and the law supporting a particular pleading." *Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir.1989). "The court must evaluate the signer's conduct 'by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted,' an evaluation which should depend on a variety of factors, including 'whether the pleading, motion, or other paper was based on a plausible view of the law.' " *Dura Systems*, 886 F.2d at 556 (quoting Fed.R.Civ.P. 11 advisory committee note). Under this standard, "[l]itigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment." *Gaiardo*, 835 F.2d at 483.

■ An award of sanctions under Rule 11 is not justified in the instant case. In the Princeton Economics Response to the AT & T First Set of Interrogatories, Princeton Economics indicated a number of its allegations with respect to the RICO

Count were based on first hand knowledge as to allegedly fraudulent representations made by AT & T concerning the Spirit System. In addition, in finding the allegations made by Princeton Economics concerning its standing are insufficient, no determination is made that there was an abuse justifying the imposition of sanctions. The motion for Rule 11 sanctions is denied.

*Conclusion*

For the foregoing reasons, the motion of AT & T for summary judgment on Count I of the complaint is granted and the complaint is dismissed in its entirety. The motion of AT & T for sanctions is denied.